Filed 9/7/23  P. v. Thomas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097130 |
| Plaintiff and Respondent, | (Super. Ct. No. 97F07150) |
| v. | |
| JAMES BERTRAM THOMAS, | |
| Defendant and Appellant. | |

In an unpublished opinion, a different panel of this court upheld defendant James Bertram Thomas's conviction for first degree murder and attempted robbery.  (*People v. Thomas* (Aug. 27, 1999, C029910.) (*Thomas*).)  The trial court sentenced defendant to life without the possibility of parole.  In February 2022, defendant filed a petition for resentencing under Penal Code[1] section 1172.6.[2]  After appointing counsel but without briefing or a hearing, the trial court denied the petition, finding defendant could still be

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Effective June 30, 2022, former section 1170.95 was recodified without substantive change to section 1172.6.  (Stats. 2022, ch. 58, § 10.)  Defendant filed his petition under former section 1170.95, but we will refer to the current section 1172.6 throughout this opinion.

convicted of felony murder because he was the actual killer based on language from our prior opinion. Defendant argues the trial court erred by denying his petition without giving defendant an opportunity to brief the case or holding a hearing. Defendant also argues the trial court erred by not granting him an evidentiary hearing because he is not ineligible for resentencing as a matter of law. We reverse.

## BACKGROUND

We take the facts from our prior opinion. (*Thomas*, *supra*, C029910.)[3] According to our opinion, on the night of September 2, 1997, the victim, truck driver Darrell Gaskill, called his brother from the road to tell him he would be in Dixon the following morning. Gaskill cashed his paycheck that day and had about $2,000 in cash on him. (*Ibid*.)

Gaskill met up with a prostitute, Nikita Powell, and her friend, Janith Poole, in the parking lot of a market/gas station. Powell agreed to perform an act of prostitution involving Poole for money. The three went into the sleeper portion of Gaskill's truck to discuss the transaction. Then, Powell left, secured drugs from a friend, and returned. After the three smoked the drugs and engaged in sexual activity, Powell wanted more drugs. Gaskill gave her $10 for drugs and some money for gas. Defendant met up with Powell while she was putting gas in her car. (*Thomas*, *supra*, C029910.)

After securing more drugs, Powell, defendant, and a third person, T.G., went to an apartment to smoke the drugs. At that point, Powell brought up the idea of robbing Gaskill. Defendant said he would do it, but needed a gun. (*Thomas*, *supra*, C029910.)

Defendant and Powell drove to an intersection where defendant got out of the car. When he got back in the car, Powell did not see if he had a gun or a knife. The two planned the robbery on the way back to Gaskill's truck. (*Thomas*, *supra*, C029910.)

---

[3] We granted defendant's motion to incorporate by reference the record of his prior appeal. (Cal. Rules Court, rule 8.147(b).) We provide this summary of facts from the prior opinion in defendant's direct appeal solely for context and do not rely on these facts for our analysis or disposition here. (§ 1172.6, subd. (d)(3).)

2

Meanwhile, Poole and Gaskill stayed in the truck. When Powell did not return immediately, Poole warned Gaskill to hide his money. (*Thomas*, *supra*, C029910.)

Forty minutes later, Powell knocked on the truck's door, and Poole let her in. Defendant climbed in soon after with a gun and told Gaskill, "This is a mother fuckin' holdup." Poole got out of the truck, and pleaded with defendant not to hurt Gaskill. Defendant hit Gaskill in the head with a gun, demanding his wallet. Powell tried to pull defendant out of the truck while Gaskill pushed defendant out of the truck. Defendant got up, turned around, and shot Gaskill. (*Thomas*, *supra*, C029910.)

Defendant and Powell got into Poole's car, and defendant told Poole to drive. In the middle of the block, Powell got out of the car with the gun. When they got back to the apartment, defendant complained to others, "[M]an, these mother fuckin' bitches don't even know how to pull a robbery." T.G. told a sheriff's deputy that defendant said he "accidentally shot a white dude because the dude pushed him." (*Thomas*, *supra*, C029910.)

Poole drove back to the market/gas station an hour later to see if Gaskill was still alive. She parked near the truck, looked inside, and called out his name, but got scared and left. After smoking crack for two days, her sister persuaded her to talk to the police. (*Thomas*, *supra*, C029910.)

T.G. drove Powell to the scene of the crime the next morning. The area was cordoned off. T.G. called sheriff's deputies and named defendant and Powell as the persons responsible for the shooting. (*Thomas*, *supra*, C029910.)

Powell turned herself in and pled guilty to first degree murder. In exchange for her truthful testimony at trial, the prosecution agreed not to pursue the special-circumstance allegation against her. (*Thomas*, *supra*, C029910.)

No physical evidence tied defendant to the shooting. In his defense, defendant challenged the credibility of T.G., Powell, and Poole and claimed he did not kill Gaskill. He also introduced evidence that another African American man had been in the area the

night of the shooting and had returned to the market/gas station three times in the following days. This man approached the clerks in a threatening manner. Sheriff deputies did not follow up on a call from the defense investigator informing them the clerks had been threatened by someone. (*Thomas*, *supra*, C029910.)

The trial court instructed the jury on the subjects of principals and aiders and abettors of crimes as follows: "Persons who are involved in committing or attempting to commit a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation, is equally guilty. [¶] Principals, include: [¶] One, those who directly and actively commit or attempt to commit the act constituting the crime, or [¶] [t]wo, those who aid and abet the commission or attempted commission of the crime. [¶] A person aids and abets the commission or attempted commission of a crime when he or she: [¶] One, with knowledge of the unlawful purpose of the perpetrator, and [¶] [t]wo, with the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] [t]hree, by act or advice aids, promotes, encourages, or instigates the commission of the crime." The trial court also instructed the jury, "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of attempted robbery, all persons, who either directly and actively commit the act constituting that crime, or who with knowledge of the unlawful purpose of the perpetrator of the crime and with the intent or purpose of committing, encouraging or facilitating the commission of the offense, aide, promote, encourage or instigate by act or advice its commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional or accidental."

On the subject of the natural and probable consequences doctrine, the trial court stated, "One who aids and abets another in the commission of a crime or crimes is not only guilty of those crimes, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crimes originally aided and abetted."

4

Turning to the special-circumstance allegation, the trial court instructed the jury with a modified version of CALJIC 8.80.1, "In order to be guilty of murder, as an aider and abettor to a felony murder, the accused and the killer must have been jointly engaged in the commission of the attempted robbery at the time the fatal wound was inflicted. [¶] If you find . . . [d]efendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true: [¶] The murder occurred while . . . [d]efendant was engaged in the attempted commission of the crime of robbery. [¶] The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true. [¶] If you are satisfied beyond a reasonable doubt that . . . [d]efendant actually killed a human being, you need not find . . . [d]efendant intended to kill in order to find the special circumstance to be true."

On the elements of the special-circumstance enhancement, the trial court further instructed the jury with CALJIC 8.81.17, "To find that the special circumstance referred to in these instructions as murder in the commission of an attempted robbery is true, it must be proved: [¶] One, the murder was committed while . . . [d]efendant was engaged in the commission or attempted commission of a robbery; and [¶] [t]wo, the murder was committed in order to carry out or advance the commission of the crime of attempted robbery or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the attempted robbery was merely incidental to the commission of the murder."

When asked by the jury during deliberations about the apparent conflict in the last two instructions, the trial court added, "There is no conflict . . . . [¶] The special circumstance alleges that the murder of . . . Gaskill was committed by . . . defendant while . . . defendant was engaged in the attempted commission of the crime of robbery. [¶] You need not find . . . defendant intended to kill in order to find the special circumstance to be true. The killing may have been intentional, unintentional, or

5

accidental. The murder need only have been committed in order to carry out or advance the commission of the crime of attempted robbery or to facilitate the escape therefrom or avoid detection." At no time did the trial court instruct the jury it had to find defendant was the actual killer to find the special circumstance true.

Finally, as to the firearm enhancement, the trial court instructed the jury it must find that defendant personally used a firearm in the commission of those crimes. The definition of "personally used" meant defendant "intentionally displayed a firearm in a menacing manner, intentionally fired it or intentionally struck or hit a human being with it."

The jury found defendant guilty of murder and attempted robbery and found true that he personally used a firearm in commission of the murder and attempted robbery, and found true the robbery-murder special-circumstance allegation.

The trial judge sentenced defendant to life without the possibility of parole, plus 10 years for the firearm enhancement.

On February 25, 2022, defendant filed a petition for resentencing under section 1172.6. On March 17, 2022, after appointing defendant counsel, but without holding a hearing or receiving any briefing, the trial court summarily denied defendant's petition, finding him ineligible for relief because he was the actual killer. After reviewing our prior opinion, the trial court found the jury's true finding that the special circumstance—the murder occurred during the course of an attempted robbery—meant the jury determined defendant killed his victim while engaged in the attempted commission of a robbery and the murder was committed to carry out or advance the commission of the crime of attempted robbery, to facilitate escape from that crime, or to avoid detection. This, in turn, meant defendant was the actual killer and ineligible for resentencing as a matter of law. The trial court found our prior opinion was a part of the record of conviction, and our conclusion there was sufficient evidence to support the

6

jury's special-circumstance finding was law of the case on the question as to whether defendant was the actual killer.

We granted defendant's request for permission to file the notice of appeal under the constructive filing doctrine.

DISCUSSION

Defendant argues the trial court erred in failing to grant him the opportunity to brief the matter or hold an evidentiary hearing. Further, defendant asserts the trial court erred in denying his petition because he is not ineligible for relief as a matter of law. We agree the trial court erred in failing to allow defendant the opportunity to submit a brief or hold a hearing. We further conclude, at this stage of the proceedings, the determination of whether defendant was the actual killer requires impermissible factfinding and thus reverse and remand this case for further proceedings.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation accomplished this by amending sections 188 and 189 and adding section 1172.6.

Section 188, which defines malice, now provides in part: "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) This language eliminated the use of the natural and probable consequences doctrine in murder prosecutions but left intact implied malice murder for direct aiders and abettors. (*People v. Gentile* (2020) 10 Cal.5th 830, 838-839, 846-848, 850.)

7

Section 189, subdivision (e) now limits the circumstances under which a person may be convicted of felony murder: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [defining first degree murder] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (Stats. 2018, ch. 1015, § 3.) Thus, a defendant who is the actual killer or aided and abetted the murder with the intent to kill is ineligible for resentencing under section 1172.6 as a matter of law. (See also *People v. Garcia* (2022) 82 Cal.App.5th 956, 973 [an actual killer is not eligible for § 1172.6 resentencing]; *People v. Estrada* (2022) 77 Cal.App.5th 941, 945 [murder conviction based on direct aiding and abetting with intent to kill is ineligible for § 1172.6 resentencing].)

Section 1172.6 allows "those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief." (*People v. Gentile*, *supra*, 10 Cal.5th at p. 843.) Section 1172.6, subdivisions (b) and (c) create a two-step process for evaluating a petitioner's eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*).) In the first step, the trial court determines whether the petition is facially sufficient under section 1172.6, subdivision (b). (*Lewis*, at p. 960.)

Upon submission of a facially sufficient petition that requests counsel, the court shall appoint counsel and provide the parties an opportunity to submit briefs. (§ 1172.6, subds. (b)(3), (c).) Following briefing, the court must hold a hearing to determine whether the petitioner has made a prima facie case for relief. (§ 1172.6, subd. (c).) If a sufficient prima facie showing is made, the court must issue an order to show cause. (§ 1172.6, subds. (c), (d).)

8

As our Supreme Court explained, "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.)

Whether the petitioner has made a prima facie showing of entitlement to relief under section 1172.6 is a " 'purely legal conclusion, which we review de novo.' " (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

Both parties agree, as do we, the trial court erred in failing to receive briefing or hold a hearing to determine whether defendant made a prima facie showing he was entitled to relief. (§ 1172.6, subds. (b)(3), (c).) The People argue any error in this regard is harmless because defendant was the actual killer and ineligible for resentencing as a matter of law.

In arriving at this finding, the trial court relied on our prior opinion. Trial courts are permitted to review the record of conviction at the prima facie stage and "[a]ppellate opinions . . . are generally considered to be part of the record of conviction." (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "[T]he probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Ibid*.) Further, "the factual summary in an appellate opinion is not evidence

9

that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988.)

Here, our prior opinion does *not resolve* the question of whether defendant was the actual killer as a matter of law. Rather, we answered the question of whether there was substantial evidence to support the jury's verdict finding that the special-circumstance allegation was true. We focused on defendant's argument the shooting was either accidental or committed after the robbery was abandoned. Viewed through this lens, we examined the evidence presented at trial and concluded the record contained sufficient evidence to warrant the inference of guilt drawn by the trier of fact. Our conclusion, based upon the facts presented in that appeal, that a reasonable jury could infer defendant shot at Gaskill in furtherance of the robbery, was not a legal conclusion that as a matter of law defendant was Gaskill's actual killer. Thus, the reliance on our prior opinion to determine defendant was the actual killer was error.

At this prima facie stage, we cannot conclude defendant was the actual killer without engaging in impermissible factfinding. At trial, there were three separate theories under which the jury could have found defendant guilty of first degree murder and decide the special-circumstance allegation was true. Importantly, two of those theories did not require the jury to find defendant was the actual killer or had the intent to kill.

*First*, the jury could have found defendant used a gun to shoot and kill Gaskill during the robbery, thus, making him the actual killer and first degree murderer. (CALJIC 8.10.)

*Second*, however, the jury could have found defendant guilty of murder under a felony-murder theory as a participant in the plot to rob Gaskill. Indeed, this was the argument advanced by the prosecutor in his closing argument. According to the prosecutor, all he was required to prove was "a human being was killed, that the killing was unlawful, . . . and that the killing occurred during . . . an attempted robbery." This

10

was confirmed by the jury instructions given in accord with this argument.  As evident, this basis for finding defendant guilty of murder did not require the jury to find defendant was the actual killer, nor did it require the jury to find defendant had the intent to kill the victim.

*Third*, the jury could have found defendant guilty of murder under the natural and probable consequences doctrine.  As noted *ante*, the judge instructed the jury that aiders and abettors are "also guilty of any other crime committed by a principal [that] is a natural and probable consequence of the crimes originally aided and abetted."  Thus, the jury could have found defendant guilty of first degree murder because the murder was a natural and probable consequence of the robbery.  At the same time, the jury could have found defendant was only aiding and abetting the robbery, without finding defendant actually killed the victim or had the intent to kill him.

Thus, under two separate theories, the jury could have found defendant guilty of murder without finding he was the actual killer or acted with the intent to kill.

The jury instructions and the jury's true finding on the robbery-murder special-circumstance allegation do not provide the linchpin to conclude defendant was necessarily the actual killer or acted with an intent to kill as a matter of law.  The trial court instructed the jury on the two elements of this special-circumstance allegation as first, "the murder was committed while . . . [d]efendant was engaged in the commission or attempted commission of a robbery; and  [¶]  [second,] the murder was committed in order to carry out or advance the commission of the crime of attempted robbery or to facilitate the escape therefrom or to avoid detection."

On the question of whether he was the actual killer or had the intent to kill, the trial court initially instructed the jury, "If you are satisfied beyond a reasonable doubt that . . . [d]efendant actually killed a human being, you need not find . . . [d]efendant intended to kill in order to find the special circumstance to be true."  This instruction suggests that

11

in order to find the special circumstance true, the jury had to find either defendant was the actual killer, or he was an aider and abettor who had the intent to kill Gaskill.

The trial court's follow up instruction, however, injected a third option into the mix, which makes it impossible to conclude as a matter of law defendant was the actual killer or had the intent to kill. In response to a note from the jury, the trial court told the jury, "The special circumstance alleges that the murder of . . . Gaskill was committed by . . . defendant while . . . defendant was engaged in the attempted commission of the crime of robbery. [¶] You need not find . . . defendant intended to kill in order to find the special circumstance to be true. The killing may have been intentional, unintentional, or accidental. The murder need only have been committed in order to carry out or advance the commission of the crime of attempted robbery or to facilitate the escape therefrom or avoid detection." This instruction's reference to the murder committed by defendant was equally applicable to each of the three theories that we set forth *ante*, two of which required neither that he was the actual killer, nor had the intent to kill.

Importantly, the last sentence of this instruction removed the requirement defendant had to be either the actual killer or acted with the intent to kill to find the special circumstance true. Rather, it allowed the jury to find the special circumstance true solely based on the fact the murder was committed to carry out the attempted robbery, facilitate escape, or avoid detection, regardless of who was the actual killer and whether defendant had the intent to kill. Indeed, the prosecutor added ambiguity on this point when he argued to the jury, "[T]he elements that must be proven to establish the robbery-murder special circumstance are exactly the same as the first degree felony murder." Without an instruction requiring defendant to be the actual killer or to have the intent to kill, this record of conviction does not answer this question as a matter of law.

The jury's true finding defendant used a firearm in the commission of the attempted robbery and murder does not support the trial court's finding either. "Section 12022.53, subdivision (d) provides that the defendant must have intended to discharge a

firearm, but does not refer to an 'intent to achieve any additional consequence.' [Citation.]  It is thus a general intent enhancement, and does not require the prosecution to prove that the defendant harbored a particular mental state as to the victim's injury or death."  (*People v. Offley* (2020) 48 Cal.App.5th 588, 598.)  The jury in this case was instructed accordingly.  The trial court told the jury that it would need to decide whether defendant "intentionally displayed a firearm in a menacing manner, intentionally fired it or intentionally struck or hit a human being with it" but not whether he actually used it to kill the victim, or intended to kill.

In short, the trial court did not instruct the jury in a manner which establishes, as a matter of law, the jury found as a matter of law defendant was the actual killer or had the requisite intent to kill.  There was no instruction requiring the jury to conclude defendant was either the actual killer or had the intent to kill to find him guilty of first degree murder or to find the robbery-murder special circumstance true.  Moreover, the jury instructions, arguments of counsel, and facts in the record support an inference the jury may have found the special circumstance true without determining defendant was the actual killer.  First, the court gave the aiding and abetting and natural and probable consequences jury instructions that do not require defendant to have been the actual killer.  Second, the prosecutor argued the jury need only find "a human being was killed, that the killing was unlawful, . . . and that the killing occurred during . . . an attempted robbery" to find defendant guilty of felony murder.  The prosecutor coupled this argument with the contention the elements of the special-circumstance allegation were "exactly" the same as felony murder.  Third, the record disclosed evidence Powell, not defendant, had the gun after the killing.  In addition, there was evidence another African American man had been present the night of the killing.

Typically, when an instructional error occurs, a harmless error analysis is utilized. Because the instructions and the jury's verdict do not necessarily establish defendant was the actual killer or had an intent to kill, this analysis would require us to determine

whether the evidence of defendant being the actual killer or "defendant's intent to kill is overwhelming and the jury ' "could have had no reasonable doubt" that . . . defendant had the intent to kill.' " (*People v. Covarrubias* (2016) 1 Cal.5th 838, 929.)  This kind of evidentiary factfinding is improper at section 1172.6's limited prima facie stage.

We are left with a resentencing petition that is facially sufficient and a record of conviction that does not establish defendant is ineligible for relief as a matter of law. (§ 1172.6, subds. (a)-(c); *Lewis*, *supra*, 11 Cal.5th at pp. 970-972.)  We must reverse and remand the matter for the trial court to issue an order to show cause, and, to the extent necessary, conduct an evidentiary hearing.  (§ 1172.6, subd. (d).)  We express no opinion on the ultimate resolution of the petition.

## DISPOSITION

The trial court's order denying defendant's section 1172.6 petition is reversed. The case is remanded to the trial court for issuance of an order to show cause.


/s/
ROBIE, Acting P. J.



We concur:



/s/
MAURO, J.



/s/
KRAUSE, J.